IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 13−cv−01008−MSK−KMT

JOHN THOMAS SEXTON, JR.,

  Plaintiff,

v.

GOVERNOR JOHN HICKENLOOPER,
MAYOR MICHAEL HANCOCK,
LT. JAMES HENNING OF DENVER POLICE DEPARTMENT,
UNKNOWN OFFICER OF DENVER POLICE DEPARTMENT,

  Defendants.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

**Magistrate Judge Kathleen M. Tafoya**

  This case comes before the court on Defendant John Hickenlooper's Motion to Dismiss (Doc. No. 20, filed May 24, 2013 [Hickenlooper Mot. Dismiss]) and Defendants Michael Hancock and James Henning's Motion to Dismiss (Doc. No. 24, filed June 11, 2013 [Denver Defs.[1] Mot. Dismiss).  For the following reasons, the court recommends that the Motions to Dismiss be GRANTED in part and DENIED in part.

---

[1] At times, the court refers to Defendants Hancock and Henning, collectively, as the "Denver Defendants."

**FACTUAL BACKGROUND**

The following facts are taken from Plaintiff's Prisoner Complaint (Doc. No. 1, filed Aug. 17, 2013) and the parties' briefing with respect to this Recommendation.  In this case, Plaintiff alleges that Defendants Hickenlooper, Hancock, and Henning—as well as Defendant "Unknown Officer of the Denver Police Department (hereinafter "Unknown Officer")—violated his First Amendment rights to free speech and peaceful assembly, falsely arrested him, and subjected him to "police brutality."

On October 29, 2011 Defendant John Hickenlooper, the Governor of Colorado, allegedly made a "direct order" to Defendant Michael Hancock, the Mayor of Denver, Colorado, to disband an assembly of the Occupy Denver movement in Denver's Civic Center Park.  (Compl. at 4.) Plaintiff maintains Defendant Hancock passed the order down to Defendant Henning, a Denver Police Lieutenant, who, in turn conveyed the order to the Denver Police Department.  (*Id.*)

That same day, October 29, 2011, Denver Police Officers were sent to Civic Center Park in downtown Denver, to break up the Occupy Denver assembly.  (*Id.* at 3.)  Initially, eight to ten officers led by Defendant Henning went into the park to remove a plastic tarp that was draped over a tree branch.  (*Id.*)  As these officers began to remove the tarp, Defendant Henning became in engaged in what Plaintiff characterizes as a "tug o' war" with an unknown protestor.  (*Id.*)

Plaintiff maintains he was standing nearby with his hands in the air to show that he was not a threat.  (*Id.*)  Nevertheless, Plaintiff was dragged to the ground by an unidentified police officer[2]

_____

[2] It does not appear that this or any of the other unidentified police officers discussed herein are the "Unknown Officer" named as a defendant in this matter.  For clarity, the court refers to the police

2

and into the center of what was then thirty or more police officers dressed in riot gear.  (*Id.*) Plaintiff was placed in blue handcuff restraints.  (*Id.*)

Plaintiff became engaged in an argument with Defendant Henning about the "nature of his arrest."  (*Id.*)  As part of this argument, Plaintiff alleges that Defendant Henning pointed at and reprimanded him.  (*Id.*)

Shortly thereafter, the Unknown Officer put his hands around Plaintiff's neck and began choking Plaintiff, which took Plaintiff to the ground.  (*Id.*)  Plaintiff maintains that the Unknown Officer had his hands around Plaintiff's neck for so long and with such a strong grip, that Plaintiff feared for his life.  (*Id.* at 10.)

Plaintiff was then escorted through a crowd of upset protestors that witnessed this attack as a group of unidentified police officers in riot gear held them back.  (*Id.*)  Plaintiff was taken to a police van full of other arrestees, where he sat for 30 to 45 minutes. (*Id.*)  Plaintiff was then removed from the van and read charges by an unidentified police officer for disobeying a lawful order.  (*Id.*)

After returning to the van and waiting for another "hour or so," Plaintiff was taken with other arrestees to the Downtown Denver Detention Center.  (*Id.*)  When unidentified police officers came to remove Plaintiff, they placed what Plaintiff characterizes as a "Hannibel [sic] Lector" mask on Plaintiff's face.  (*Id.*)  When Plaintiff asked why the mask was necessary, the unidentified police officers responded, "because we don't want to get spit on." (*Id.*)  After Plaintiff

---

officer that has been named as a defendant as the "Unknown Officer" and refers to any other unnamed police officers as "unidentified police officers."

informed these officers that he would not spit on them, the officers informed Plaintiff that it was going to be "a long night" for him.  (*Id.* at 10-11.)

Plaintiff was then taken to a "mobile processing center" in the garage of the detention facility, where he learned he was being charged with second degree felony assault of a police officer.  (*Id.* at 11.)  Plaintiff maintains that Defendant Henning was responsible for these charges.  (*Id.*)  Plaintiff was subsequently bailed out by an unknown supporter of the Occupy Movement.  (*Id.*)

The Denver District Attorney's office ultimately decided there was not enough evidence to charge Plaintiff with second degree assault of a police officer.  (*Id.*)  An unidentified Denver Police Detective then delivered a city ordinance violation ticket, signed by Defendant Henning for "Resistance" and "Disturbance."  (*Id.*)  In October 2012, Plaintiff pleaded guilty to one charge of disturbing the peace.  (Hickenlooper Mot. Dismiss, Ex. A.)

## PROCEDURAL HISTORY

Plaintiff's Complaint asserts two claims for relief.  The first claim is asserted pursuant to 42 U.S.C. § 1983, and alleges that Defendants Hickenlooper, Hancock, and Henning violated his First Amendment rights to freedom of speech and peaceful assembly.  Plaintiff's second claim is for "Police Brutality" and "false[] arrest" against Defendants Hickenlooper, Hancock, Henning and the Unknown Officer.  Defendants have construed this claim to assert § 1983 claims for false arrest and excessive force, in violation of the Fourth Amendment, as well as state law claims for false arrest and assault and/or battery.

In light of Plaintiff's *pro se* status, the court agrees with this construction and addresses Plaintiff's second claim accordingly.[3]

Defendant Hickenlooper's Motion to Dismiss was filed on May 24, 2013.  (*See* Hickenlooper Mot. Dismiss.)  Plaintiff's Response to Defendant Hickenlooper's Motion to Dismiss was filed on June 12, 2013 (Doc. No. 25 [Resp. Hickenlooper Mot.]), and Defendant Hickenlooper filed a reply on June 26, 2013 (Doc. No. 26 [Hickenlooper Reply].

The Denver Defendants' Motion to Dismiss was filed on June 11, 2013.  (*See* Denver Defs. Mot. Dismiss.)  Plaintiff's Response[4] to the Denver Defendants' Motion to Dismiss was filed on July 5, 2013.  (Doc. No. 35 [Resp. Denver Defs. Mot.].)  Pursuant to D.C.COLO.LCivR 7.1C and Fed. R. Civ. P. 6(d), the Denver Defendants had until July 22, 2013 to file a reply.  No reply was filed on or before that date.

Accordingly, these matters are ripe for the court's review and recommendation.

---

[3] The Denver Defendants have also construed Plaintiff's Complaint to assert a § 1983 claim municipal liability.  However, in his Response the Denver Defendants' Motion, Plaintiff explicitly seeks to amend his Complaint to add a claim for municipal liability against the City and County of Denver.  *See also infra* at n.5 (finding this request for leave to amend violates D.C.COLO.LCivR 7.1C).  In light of this request, the court finds it clear that Plaintiff did not intend to assert a claim for municipal liability in the operative complaint.

[4] In his Response to the Denver Defendants' Motion to Dismiss, Plaintiff seeks to amend his Complaint to add a number of claims and defendants.  Pursuant to D.C.COLO.LCivR 7.1C, "[a] motion shall not be included in a response or reply to the original motion.  A motion shall be included in a separate paper.  *See also* Fed. R. Civ. P. 7(b)(1) ("A request for court order must be made by motion.")  As such, the court does not consider Plaintiff's request to add additional claims and defendants.

## LEGAL STANDARDS

**A.**    **Pro Se** *Plaintiff*

Plaintiff is proceeding *pro se*.  The court, therefore, "review[s] his pleadings and other

papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys."

*Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted); *see also*

*Haines v. Kerner*, 404 U.S. 519, 520 (1972) (holding allegations of a *pro se* complaint "to less

stringent standards than formal pleadings drafted by lawyers"). However, a *pro se* litigant's

"conclusory allegations without supporting factual averments are insufficient to state a claim upon

which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (citations

omitted).  A court may not assume that a plaintiff can prove facts that have not been alleged, or that

a defendant has violated laws in ways that a plaintiff has not alleged.  *Associated Gen. Contractors*

*of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526, 103 S.Ct. 897, 74 L.Ed.2d 723

(1983); *see also Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (a court may not

"supply additional factual allegations to round out a plaintiff's complaint"); *Drake v. City of Fort*

*Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) (the court may not "construct arguments or theories

for the plaintiff in the absence of any discussion of those issues").

**B.**    ***Failure to State a Claim Upon Which Relief Can Be Granted***

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss a

claim for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6)

(2007).  "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the

6

parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations and quotation marks omitted).

"A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Hall v. Bellmon*, 935 F.2d 1106, 1198 (10th Cir. 1991). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pleaded facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The *Iqbal* evaluation requires two prongs of analysis. First, the court identifies "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusion, bare assertions, or merely conclusory. *Id*. at 1949–51. Second, the Court considers the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id*. at 1951. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id*. at 1950.

Notwithstanding, the court need not accept conclusory allegations without supporting factual averments. *Southern Disposal, Inc., v. Texas Waste*, 161 F.3d 1259, 1262 (10th Cir. 1998). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1940. Moreover,

7

"[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'  Nor does the complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Id.* at 1949 (citation omitted).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'"  *Iqbal*,129 S. Ct. at 1949 (citation omitted).

## ANALYSIS

*A.*      *§ 1983 Claims*

   *1.*      *Claim One*

Both Defendant Hickenlooper and the Denver Defendants argue that Plaintiff's first claim for violations of his First Amendment rights to freedom of speech and peaceful assembly fails to state a claim for relief under § 1983.[5]  The court disagrees.

The First Amendment to the United States Constitution provides:  "Congress shall make no law . . . abridging the freedom of speech . . . or the right of the people peaceably to assemble . . . .'"  U.S. Const. amend. I.  "Although the First Amendment expressly speaks to a limitation on 'Congress,' it is well settled that its prohibition on undue abridgement of speech and assembly

---

[5] The Denver Defendants have construed Plaintiff's first claim to assert that Defendants retaliated against Plaintiff for the exercise of his constitutional rights.  The court rejects this construction. Plaintiff is not necessarily asserting that he was arrested or that Defendants broke up the Occupy Denver protest in order to retaliate against him for exercising his constitutionally-protected rights. Instead, Plaintiff is asserting a more traditional First Amendment claim—that is, regardless of their underlying motivations, Defendants' actions impermissibly infringed upon his First Amendment rights to free speech and freedom of assembly.

applies with equal force to state action." *ACLU of Colo. v. City and Cnty. of Denver,* 569 F. Supp. 2d 1142, 1161 (D. Colo. 2008).

The First Amendment reflects a "profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open," and the protection of speech on public issues is one of "central importance." *Boos v. Barry,* 485 U.S. 312, 318 (1988) (internal quotation marks omitted). "The freedoms of speech and assembly protected by the First Amendment are perhaps the most cherished of all Constitutional protections, and actions which abridge them should necessarily be viewed with concern." *ACLU of Colo.,* 569 F. Supp. 2d at 1161.

"The first inquiry a court must undertake when a First Amendment claim is asserted is whether the plaintiff has engaged in 'protected speech.'" *Goulart v. Meadows,* 345 F.3d 239, 246 (4th Cir. 2003) (citing *Cornelius v. NAACP Legal Def. & Educ. Fund,* 473 U.S. 788, 787 (1985)). Thus, to state a claim for violations of his First Amendment rights, Plaintiff must allege that he was engaged in (1) speech that was (2) protected. *Weise v. Casper,* 563 F.3d 1163, 1169 (10th Cir. 2010) ("For the First Amendment to bar the government from taking action against a speaker, the speaker's activity in question must be (1) speech and (2) protected."); *ACLU of Colorado v. City and Cnty. of Denver,* 569 F. Supp. 2d at 1161 ("The party asserting the First Amendment violation has the burden to prove that [government action] affect[ed] protected expression . . . .").

The court finds that Plaintiff has sufficiently alleged that he was engaged in protected speech. It was well established at the time of the October 29, 2011 Occupy Denver protest that the right to peacefully assemble is a right traditionally protected by the First Amendment. *See, e.g.,*

*Edwards v. South Carolina,* 372 U.S. 229, 235 (1963); *Cox v. State of La.,* 379 U.S. 536, 545

(1965).  Plaintiff's Complaint alleges that he was involved[6] in a peaceful assembly known as

Occupy Denver.  Although Plaintiff's allegations do not specifically discuss the nature of the

Occupy Denver assembly, it is reasonable to infer, based on the widely-publicized nature of the

Occupy Movement, that the Occupy Denver rally was formed with a purpose similar to Occupy

groups—namely, to "peacefully protest[] against economic inequalities in American society and

governments that it believes have been corrupted by large corporations, banks, and 'wealthy elite,'

and are unresponsive to the needs of ordinary citizens and voters."  *Isbell v. City of Oklahoma City,*

No. CIV-11-1423-D, 2011 WL 6152852, at *1 (W.D. Okla. Dec. 12, 2011).[7]

Plaintiff further alleges that the Occupy Denver protest occurred in a traditional public

forum, Civic Center Park in Denver.  "Traditional public fora"—namely, public streets, sidewalks,

and parks—have long been recognized as places in which assembly, communication of thoughts

between citizens, and discussion of public issues should be welcomed.  *Boos,* 485 U.S. at 318.

---

[6] Although Plaintiff has not explicitly alleged he participated in the Occupy Denver protest, it is reasonable to infer this from Plaintiff's allegations.

[7] *See also Occupy Minneapolis v. Cnty. of Hennepin,* 866 F. Supp. 2d 1062, 1066 n.1 (D. Minn. 2011) (Occupy Wall Street is a "leaderless resistance movement" generally protesting Wall Street and corporate "greed"); *Dukore v. Dist. of Columbia,* --- F. Supp. 2d ----, 2013 WL 5278353, at *1 n.1 (D.D.C. Sept. 19, 2013 (describing the Occupy Movement as a people-initiated movement that commenced in September 2011 with Occupy Wall Street in Manhattan's financial district in New York City and, at its peak, spread to hundreds of cities in the United States and more than 1500 locations worldwide.  It seeks to expose how "the wealthiest 1% of society are promulgating an unfair global economy that is harming people, and destroying communities worldwide."  The Occupy protestors have come out "to protest and to petition the government for more economic equality through societal and governmental change.").

Such places "occupy a special position in terms of First Amendment protection," and the government's ability to restrict expressive activity in such public fora is "very limited." *Id.*

Despite their importance, however, the rights conferred by the First Amendment are not absolute. Even in a traditional public forum, the government may impose reasonable restrictions on the time, place, and manner of protected speech. *Ward v. Rock Against Racism,* 491 U.S. 781, 791 (1989). Such restrictions are constitutional if: (i) they are justified without regard to the content of the speech; (ii) they are narrowly-tailored to serve a significant governmental interest; and (iii) there are ample alternative channels for communication of the desired message. *Id.*

Nevertheless, once a plaintiff demonstrates a restriction on the exercise of protected expression in a traditional public forum, the burden shifts to the government to establish the test outlined in *Ward. See ACLU of Colo.,* 569 F. Supp. 2d at 1161 (quoting *United States v. Playboy Entm't Group, Inc.,* 529 U.S. 803,816 (2000)) ("[w]hen the Government restricts speech, the Government bears the burden of proving the constitutionality of its actions"). Here, Plaintiff alleges not only that the Defendants ordered the Denver Police to "break up" and "disband" the Occupy Denver protest, but also that he was ultimately arrested for his involvement in that protest. As such, Defendants bear the burden of establishing that their actions were nevertheless constitutional. Because that matter cannot be resolved on the pleadings, Defendants' Motions to Dismiss are properly denied to the extent they seek to dismiss Plaintiff's first claim for relief.

### 2.    *Claim Two*

Plaintiff's second claim asserts that he was falsely arrested and a victim of police brutality on October 29, 2011. As discussed above, the court has construes this claim to assert § 1983

claims for false arrest and excessive force.

      *a.*    ***False Arrest***

Defendants argue that Plaintiff's false arrest claim is barred by the favorable termination rule first announced in *Heck v. Humphrey,* 512 U.S. 477 (1994).  The court agrees.

In *Heck,* the Supreme Court held:

> in order to recover damages for . . . harm cause by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus.

512 U.S. at 486-87.  Thus when a plaintiff "seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.  *Id.* at 487.

Here, Plaintiff pleaded guilty to one count of disturbing the peace.  (*See* Hickenlooper Mot. Dismiss, Ex. A.)  A judgment in Plaintiff's favor on his § 1983 claim for false arrest would necessarily imply the invalidity of his guilty plea for disturbing the peace.  *See Burden v. Wood,* 200 F. App'x 806, 807-808 (10th Cir. 2006) (affirming dismissal pursuant to *Heck* of § 1983 claim for false arrest where the plaintiff failed to show his conviction was overturned); *Franklin v. Thompson,* 981 F.2d 1168, 1170 (10th Cir. 1992) ("plaintiff's misdemeanor convictions foreclose her from challenging the legality of her arrest in a subsequent civil action"); *Lawrence v. Green,* No. 07-cv-00361-WYD-CBS, 2007 WL 3090773, at *4 (D. Colo. Oct. 19, 2007) (finding § 1983

false arrest claim was barred by *Heck* based on the plaintiff's guilty plea to a misdemeanor charge). As such, the court finds that Plaintiff's false arrest claim is barred pursuant to *Heck.*[8]

Even assuming Plaintiff could overcome *Heck's* favorable termination requirement, Plaintiff's false arrest claim nevertheless fails.  To maintain a false arrest claim under § 1983, a plaintiff must demonstrate the elements of a common law claim and show that his Fourth Amendment right to be free from unreasonable search and seizure has been violated.  *See Pierce v. Gilchrist,* 359 F.3d 1279, 1289 (10th Cir. 2004) (finding that the elements of the common law tort for false arrest "serve[] as an important guidepost for defining the constitutional cause of action," but that "the ultimate question is always whether the plaintiff has alleged a constitutional violation.") (citation omitted).  Under Colorado law, to establish a false arrest claim, a plaintiff must prove the following elements: (1) the defendants intended to restrict plaintiff's freedom of movement; (2) plaintiff's freedom of movement was restricted for a period of time, however short, by an act of defendants; and (3) plaintiff was aware that her freedom of movement was restricted. *Goodboe v. Gabriella*, 663 P.2d 1051, 1055–56 (Colo.App.1983) (citing CJI Civ. 21:1 (2d ed.1980)).

A claim for false arrest fails if the defendant had probable cause to believe that the plaintiff committed a criminal offense.  *Rose v. City & Cnty. of Denver*, 990 P.2d 1120, 1123 (Colo. App.

---

[8] In so finding, the court acknowledges that the Tenth Circuit has found that *Heck* does not bar an unlawful arrest claim where the plaintiff was never in custody, but instead merely received a citation.  *Morris v. Noe,* 672 F.3d 1185, 1193 n.2 (10th Cir. 2012).  *See also Cohen v. Longshore,* 621 F.3d 1311, 1317 (10th Cir. 2012) ("a petitioner who has no available remedy in habeas, through no lack of diligence on his part, is not barred by *Heck* from pursuing a § 1983 claim."); *Ferry v. Gonzalez,* 457 F.3d 1117, 1132 (10th Cir. 2006) (habeas petition is moot when detainee is no longer in custody).  Here, however, Plaintiff received 30 days of jail time based on his conviction for disturbing the peace.  (*See* Hickenlooper Mot. Dismiss, Ex. A.)

13

1999).  "The existence of probable cause to arrest constitutes justification and is a complete defense to an action for false arrest under § 1983, even if the conviction is the result of a guilty plea to a lesser charge than that for which the plaintiff was arrested."  *Guinn v. Unknown Lakewood Police Officers,* No. 10-cv-00827-WYD-CBS, 2010 WL 4740326, at *6 (D. Colo. Sept. 30, 2010) *Recommendation adopted and affirmed at* 2010 WL 4740316 (D. Colo. Nov. 16, 2010) (citations and internal quotation marks omitted).  *See also Gouskos v. Griffith,* 122 F. App'x 965, 972 (10th Cir. 2005) ("Likewise, if the false-arrest plaintiff is convicted in the criminal trial for the acts for which he was arrested, probable cause for his arrest is conclusively established and precludes a subsequent civil action for false arrest); *Goodloe v. City & Cnty. of Denver,* No. 05-cv-02522-EWN-MEH, 2007 WL 2697605, at *11 (D. Colo. Sept. 11, 2007) (plaintiff could not maintain a false arrest claim where he was convicted pursuant to a guilty plea).

Plaintiff's § 1983 false arrest claim fails because his guilty plea establishes probable cause. (*See* Hickenlooper Mot. Dismiss, Ex. A.)[9]  Therefore, Plaintiff's second claim is properly dismissed to the extent it asserts a § 1983 claim for false arrest.

### b.    Excessive Force

Both Defendant Hickenlooper and the Denver Defendants argue that Plaintiff's § 1983 excessive force claim is properly dismissed as to them because Plaintiff's allegations fail to demonstrate that they personally participated in the use of force against Plaintiff.  The court agrees

---

[9] The court may take judicial notice of Plaintiff's guilty plea without converting the motions to dismiss into motions for summary judgment. *Anderson v. Cramlet,* 789 F.2d 840, 845 (10th Cir. 1986); *Grynberg v. Koch Gateway Pipeline Co.,* 390 F.3d 1276, 1278 n.1 (10th Cir. 2004) (facts subject to judicial notice may be considered without converting a motion to dismiss into a motion for summary judgment).

with respect to Defendants Hickenlooper and Hancock, but disagrees with respect to Defendant Henning.[10]

Personal participation is an essential allegation in a § 1983 claim. *Bennett v. Passic,* 545 F.2d 1260, 1262-63 (10th Cir. 1976). "Individual liability under § 1983 must be based on [the defendant's] personal involvement in the alleged constitutional violation." *Foote v. Spiegel,* 118 F.3d 1416, 1423 (10th Cir. 1997). Liability under § 1983 does not lie merely because an individual had general supervisory authority over another person who actually commits a constitutional deprivation. Instead, a defendant may be liable for personally engaging in the conduct constituting the deprivation, for controlling or directing the conduct, or for promulgating and/or implementing an official policy that caused the complained of constitutional harm. *Martinez v. Milyard,* 440 F. App'x 637, 638 (10th Cir. 2011) (citing *Gallagher v. Shelton,* 587 F.3d 1063, 1069 (10th Cir. 2009) & *Dodds v. Richardson,* 614 F.3d 1185, 1199 (10th Cir. 2011)).

### i.  *Defendants Hickenlooper and Hancock*

The court finds that Plaintiff has failed to establish that Defendants Hickenlooper and Hancock personally participated in the alleged use of excessive force against him. Plaintiff has not alleged that Defendants Hickenlooper and Hancock were present in Civic Center Park at the time the Occupy Denver protest was broken up. As such, Plaintiff's allegations fail to suggest that these Defendants either personally used excessive force against him or controlled or directed the Unknown Officer to choke Plaintiff.

Arguably, Defendant Hickenlooper's alleged order, which was allegedly passed from

---

[10] Because Plaintiff has not yet named, let alone served, the Unknown Officer, the court does not consider whether Plaintiff has stated a § 1983 excessive force against him.

Defendant Hancock to Defendant Henning to the Denver Police Department, could constitute a "policy" promulgated or implemented by these Defendants.  However, the court rejects that this order caused the alleged use of excessive force against Plaintiff.  Plaintiff alleges the order only directed that the Occupy Denver protest be "br[oken] up" or "disbanded" (Compl. at 3-4); he does not allege that it directed or authorized the use of force against Plaintiff or any of the other Occupy Denver protestors.

Furthermore, to be held liable under § 1983 for promulgating or implementing a policy, a supervisory defendant must "act[] with the state of mind required to establish the alleged constitutional deprivation."  *Dodds,* 614 F.3d at 1199.  Plaintiff's Complaint is devoid of any allegations to suggest that, in promulgating and/or implementing the alleged order to disband the Occupy Denver movement, Defendants Hickenlooper and Hancock intended that the Unknown Officer forcibly arrest protestors.  *See Brower v. Cnty. of Inyo,* 489 U.S. 593, 596 (1989) (liability for excessive force under the Fourth Amendment attaches only when there is an "intentional acquisition of physical control"; it does not apply for "unknowing acts" or the "accidental effects of otherwise lawful government conduct.").

Accordingly, the court finds that Plaintiff's Complaint fails to demonstrate that Defendants Hickenlooper and Hancock personally participated in the alleged unconstitutional use of excessive force against him.  Therefore, Plaintiff's § 1983 excessive force claim is properly dismissed as to Defendants Hickenlooper and Hancock.

### ii.     *Defendant Henning*

However, the court finds that Plaintiff has sufficiently alleged that Defendant Henning

personally participated in the alleged use of excessive force against Plaintiff.  It is not necessary for an officer to physically contact a plaintiff to be held liable for excessive force.  *Crespin v. Castro,* No. 09-cv-00427-MSK-MJW, 2010 WL 3894197, at *6 (D. Colo. Sept. 30, 2010).  Instead, an officer defendant may be held liable for use of excessive force under § 1983 if he or she fails to intervene to prevent a fellow officer's use of such force.  *See Fogarty v. Gallegos,* 523 F.3d 1147, 1162 (10th Cir. 2008).  "[T]he officer must have had a realistic opportunity to intervene to prevent harm from occurring."  *Savannah v. Collins,* --- F. App'x ----, 2013 WL 6171012, at *2 (10th Cir. Nov. 26, 2013) (citing *Vondrak v. City of Las Cruces,* 535 F.3d 1198, 1210 (10th Cir. 2008)).  In other words, the officer must have witnessed the use of excessive force, had a realistic opportunity to end it, and failed to do so.  *See Wallin v. Dycus,* 381 F. App'x 819, 823 (10th Cir. 2010) (citation omitted).

The court finds that Plaintiff's allegations are sufficient to raise a plausible inference that Defendant Henning failed to intervene to prevent the Unknown Officer's use of excessive force. First, Plaintiff alleges that "shortly []after" Defendant Henning was "pointing at [Plaintiff] and reprimanding [him]," the Unknown Denver Police Officer put his hands around Plaintiff's neck and began choking him.  (Compl. at 3.)  Plaintiff further alleges that these events were captured in photographs that were taken "right after each other."  (Compl. at 3, 10.)[11]  These allegations,

---

[11] In his Response, Plaintiff maintains that after Defendant Henning reprimanded him, he pointed to the Unknown Officer who then "place[d] his hand around Plaintiff's neck and takes him to the ground on his back where he continues to choke the Plaintiff."  (Compl. at 3.)  Although the court has not considered these additional allegations in resolving the Denver Defendants' Motion to Dismiss, *Pace v. Swerdlow,* 519 F.3d 1067, 1073 (10th Cir. 2008) (court's may look only "to the specific allegations in the *complaint* to determine whether they plausibly support a legal claim for relief.") (emphasis added), it is nevertheless worth noting that these allegations provide additional

which must be accepted as true at this stage, are sufficient to demonstrate that Defendant Henning witnessed the use of excessive force against Plaintiff.

Second, Plaintiff's allegations of the duration of the Unknown Officer's use of force—specifically, that he had "his hands around [his] neck for so long . . . that [Plaintiff] feared [he] was being choked to death" (Compl. at 10)—plausibly suggest that Defendant Henning had a realistic opportunity to intervene and prevent that use of force.  Finally, although Plaintiff does not specifically allege that Defendant Henning failed to prevent the Unknown Officer from choking him, it is reasonable to infer from Plaintiff's allegations that Defendant Henning did not intervene.

Accordingly, while Plaintiff's allegation fails to establish that Defendants Hickenlooper and Hancock personally participated in the alleged use of excessive force, the court finds that Plaintiff has sufficiently alleged that Defendant Henning failed to intervene to prevent the Unknown Officer's use of excessive force.  Furthermore, this "duty [to intervene] was clearly established law at the time of [Plaintiff's] arrest."  *Fogarty,* 523 F.3d at 1162 (citing *Mick v. Brewer,* 76 F.3d 1127, 1136 (10th Cir. 1996)).  As such, Defendant Henning is not entitled to qualified immunity from this claim.  *See Pearson v. Callahan,* 555 U.S. 223, 231 (2009). Therefore, Plaintiff's § 1983 excessive force claim should not be dismissed as to Defendant Henning.

**B.      *State Law Claims***

Defendants argue that, to the extent Plaintiff's second claim asserts state law claims for false arrest and assault and/or battery, they are barred because Plaintiff did not file any notice of

---

support for the conclusion that Defendant Henning may have witnessed, and perhaps even directed, the Unknown Officer's use of force against Plaintiff.

claim(s), as required by the Colorado Governmental Immunity Act ("CGIA"), Colo. Rev. Stat. §

24-10-101 *et seq*.  The court agrees.

The CGIA's notice requirement provides:

> Any person claiming to have suffered an injury by a public entity or by an
> employee thereof while in the course of such employment, whether or not by a
> willful and wanton act or omission, shall file a written notice as provided in this
> section within one hundred eighty-two days after the date of the discovery of the
> injury, regardless of whether the person then knew all of the elements of a claim or
> of a cause of action for such injury. Compliance with the provisions of this section
> shall be a jurisdictional prerequisite to any action brought under the provisions of
> this article, and failure of compliance shall forever bar any such action.

Colo. Rev. Stat. § 24-10-109(1).

The statutory notice provisions of the CGIA apply when federal courts hear Colorado tort

claims under supplemental jurisdiction.  *Renalde v. City & Cnty. of Denver,* 807 F. Supp. 668, 675

(D. Colo. 1992).  Failure to file the required written notice "operates as a jurisdictional bar to the

lawsuit."  *Aspen Orthopaedics & Sports Medicine, LLC v. Aspen Valley Hosp. Dist.,* 353 F.3d 832,

839 (10th Cir. 2003).  Moreover, "a plaintiff must plead compliance with the CGIA's notice

provisions in the complaint to avoid dismissal."  *Id.* at 840.  "When a plaintiff fails to plead

compliance with the CGIA, and a court addresses the case in the context of a motion to dismiss, the

court must accept as a matter of 'fact' that the plaintiff failed to comply with the notice

provisions."  *Id.*

Here, Plaintiff has not alleged compliance with the CGIA in his Complaint.  (*See generally*

Compl.)  Further, Plaintiff appears to admit in his Responses that he failed to file the notice of

claims required by the CGIA.  (*See* Resp. Hickenlooper Mot. at 5-6; Resp. Denver Defs. Mot. at

10.)

Plaintiff nevertheless argues that the CGIA notice requirement does not apply in this case because Defendants' conduct (1) created a dangerous condition in Civic Center Park on October 29, 2011 and (2) was willful and wanton.  However, while the CGIA waives sovereign immunity for claims based on such conditions or conduct, Colo. Rev. Stat. §§ 24-10-106(1)(e), 118(1), the notice requirements of the CGIA still applies to such claims, *see Havens v. Johnson,* No. 09-cv-01380-MSK-MEH, 2012 WL 871195, at 8 n.6 (D. Colo. Mar. 13, 2012) (quoting Colo. Rev. Stat. § 24-10-109(1)) (a notice of claim is required regardless of whether the claim alleges willful and wanton conduct); *Colo Dep't of Transp. v. Brown Retail Group, Inc.,* 189 P.3d 687, 689 (notice requirement applies to claims for injuries arising out of a dangerous condition).

Accordingly, to the extent that Plaintiff's second claim alleges state law tort claims for false arrest and battery, the court finds that they are barred because Plaintiff failed to file notice of his claims, as required by the CGIA.  Therefore, Plaintiff's state law claims are properly dismissed.

WHEREFORE, for the foregoing reasons, I respectfully

RECOMMEND that Defendant John Hickenlooper's Motion to Dismiss (Doc. No. 20) and GRANTED in part and DENIED in part.  Specifically, I recommend that Defendant Hickenlooper's Motion be DENIED with respect to Plaintiff's first claim for violations of the First Amendment and GRANTED with respect Plaintiff's second claim.  I further

RECOMMEND that Defendants Michael Hancock and James Henning's Motion to Dismiss (Doc. No. 24) be GRANTED in part and DENIED in part.  Specifically, I recommend that Defendant Hancock and Henning's Motion be GRANTED with respect to Plaintiff's second claim—to the extent that claim asserts state law tort claims, a § 1983 claim for false arrest, and a §

1983 claim for excessive force against <u>Defendant Hancock</u>—and DENIED with respect to Plaintiff's first claim for violations of the First Amendment and second claim—but only to the extent the latter claim asserts a § 1983 claim for excessive force against <u>Defendant Henning</u>.

## ADVISEMENT TO THE PARTIES

Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995).  A general objection that does not put the district court on notice of the basis for the objection will not preserve the objection for *de novo* review.  "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review."  *United States v. One Parcel of Real Prop. Known As 2121 East 30th Street, Tulsa, Okla.*, 73 F.3d 1057, 1060 (10th Cir. 1996).  Failure to make timely objections may bar *de novo* review by the district judge of the magistrate judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge.  *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (a district court's decision to review a magistrate judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule");  *One Parcel of Real Prop.*, 73 F.3d at 1059-60 (a party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an

issue for *de novo* review by the district court or for appellate review);  *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Ref. Sys., Inc*., 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the magistrate judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the magistrate judge's ruling); *but see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

Dated this 20th day of February, 2014.

BY THE COURT:

Kathleen M. Tafoya
United States Magistrate Judge