**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Chief Judge Marcia S. Krieger**

**Civil Action No. 13-cv-01008-MSK-KMT**

**JOHN THOMAS SEXTON, JR.,**

    **Plaintiff,**

v.

**GOVERNOR JOHN HICKENLOOPER;
MAYOR MICHAEL HANCOCK;
LT. JAMES HENNING, Denver Police Department; and
UNKNOWN OFFICER, Denver Police Department,**

    **Defendants.**

**OPINION AND ORDER ADOPTING RECOMMENDATION
AND GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTIONS TO DISMISS**

    **THIS MATTER** comes before the Court on the Recommendation **(#54)** of the Magistrate Judge that Defendant John Hickenlooper's Motion to Dismiss **(#20)** be granted in part and denied in part, and that the Defendants Michael Hancock and James Henning's Motion to Dismiss **(#24)** be granted in part and denied in part.

**I. Background**

    The following facts are derived from the factual allegations contained in the Plaintiff John Thomas Sexton, Jr.,'s *pro se* prisoner Complaint **(#1)**.[1]

---

[1] In considering Mr. Sexton's filings, the Court is mindful of his *pro se* status, and accordingly, reads his pleadings liberally. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). However, such liberal construction is intended merely to overlook technical formatting errors and other defects in his use of legal terminology and proper English. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). *Pro se* status does not relieve Mr. Sexton of the duty to comply with the various rules and procedures governing litigants and counsel or the requirements of the substantive law, and in these regards, the Court will treat Mr. Sexton according to the same standard as counsel licensed to practice law before the bar of this Court. *See McNeil v. U.S.*, 508 U.S. 106, 113 (1993); *Ogden v. San Juan County*, 32 F.3d 452, 455 (10th Cir. 1994).

1

In 2011, Mr. Sexton participated in the Occupy Denver movement in Denver's Civic Center Park.[2] At some unspecified time, Defendant Hickenlooper ordered Defendant Hancock to have the Occupy Denver movement "disbanded." That order was passed on by Defendant Hancock to Defendant Henning and the Denver Police Department.

On October 29, 2011, while Mr. Sexton was in Civic Center Park as part of Occupy Denver[3] about eight to ten officers, led by Defendant Henning, came into the park to remove a plastic tarp that was draped over a tree. As the officers began to remove the tarp, Defendant Henning became engaged in a "tug o' war" with an unknown protester. Mr. Sexton was standing nearby with his hands in the air to show that he was not a threat.

Presumably while the first officers were engaged with removing the tarp, about twenty or more additional officers entered the park dressed in riot gear. Mr. Sexton was dragged to the ground by an unknown officer. He was placed in handcuffs almost immediately and was separated from other protesters by circling police, led by Defendant Henning. As he sat, Mr. Sexton argued with Defendant Henning over the nature of his arrest. Defendant Henning pointed at Mr. Sexton and reprimanded him.

---

[2] Although the Complaint does not specifically discuss the nature of the Occupy Denver movement, it is reasonable to infer based on the movement's publicity that the was formed with a purpose similar to other Occupy groups — namely, to protest against economic American society and corruption by large corporations, bands, and the wealthy elite.

[3] Mr. Sexton does not specifically allege that he was in Civic Center Part as part of Occupy Denver, but it is reasonable to infer this fact from the whole of his allegations.

Shortly thereafter, an Unknown Officer[4] entered the scene and put his hands around Mr. Sexton's neck. He began choking Mr. Sexton and moving him toward the ground "as if to shut [him] up." The officer squeezed Mr. Sexton's neck so hard that he began to fear for his life.

Mr. Sexton was then escorted through a crowd of protestors being held back by police. He was taken to a police van full of other arrestees and waited for a period of time. Eventually, he was informed that he was being charged with disobeying a lawful order.

Mr. Sexton and the other arrestees were transported to the Denver Detention Center. Before Mr. Sexton was removed from the van, an officer put a mask on his face. He asked why he needed to wear the mask, and an officer said, "Because we don't want to get spit on." Mr. Sexton told the officer he never spit on anyone. An officer told him that it was going to be "a long night" for him.

During processing, Mr. Sexton was told that he was being charged with second degree felony assault of a police officer. After two days in jail, Mr. Sexton was bailed out by an unknown supporter of the Occupy Denver movement. Ultimately, the assault charge against him was dismissed. Later, he was issued a ticket for violating city ordinances, including citations for "resistance and disturbance." All charges were dismissed, except violation of a Denver ordinance prohibiting disturbing the peace[5], to which Mr. Sexton pled guilty.

The Complaint asserts the following claims: (1) a claim under 42 U.S.C. § 1983 for infringement of Mr. Sexton's First Amendment rights to free speech and freedom of assembly; and (2) a claim for "police brutality" and "false arrest." The parties agree that Mr. Sexton's

---

[4] The Unknown Officer is named as a Defendant in this case. To date, the Unknown Officer has not been specifically identified or properly served.

[5] The Court takes judicial notice of Mr. Sexton's guilty plea without converting the motions to dismiss into motions for summary judgment. *Grynberg v. Kock Gateway Pipeline Co.*, 390 F.3d 1276, 1278 n.1 (10th Cir. 2004).

second claim encompasses a claim under 42 U.S.C. § 1983 for the use of excessive force in effectuating an unlawful arrest under the Fourth Amendment, and state law tort claims for false arrest and assault and battery.[6] Mr. Sexton seeks damages, as well as equitable relief in the form of Defendant Henning and the Unknown Officer being relieved from their duties as officers.

Defendants Hickenlooper, Hancock, and Henning[7] move to dismiss **(#20, 24)** Mr. Sexton's claims under Fed. R. Civ. P. 12(b)(6) and 12(b)(1). The Defendants argue that the Complaint fails to state a claim against them for violations under the First or Fourth Amendments; that his § 1983 claim for unlawful arrest is barred under *Heck v. Humphrey*, 512 U.S. 477 (1994); and that any state law tort claims are barred under the Colorado Governmental Immunity Act (CGIA). Each Defendant also raises the defense of qualified immunity.

The matters were referred to the Magistrate Judge, who recommends that the Defendants' Motions to Dismiss **(#20, 24)** be granted in part and denied in part. The Recommendation found that (1) the Complaint states a plausible claim for violation of First Amendment rights; (2) the claim for unlawful arrest under the Fourth Amendment is barred under *Heck*; (3) the Complaint fails to state a claim of excessive force against Defendants Hickenlooper and Hancock, but states a plausible claim of excessive force against Defendant Henning; and (4) the state law tort claims are barred under the CGIA because he failed to provide notice as required under the statute.

---

[6] Although it is not clear from the Complaint, Mr. Sexton clarifies in his Response **(#35)** to Defendants Hancock and Henning's Motion to Dismiss that the Complaint does not allege any claims against the Defendants in their official capacities. In his Response, however, he seeks to amend the Complaint to add such claims, as well as other new claims against new defendants. The request to amend violates D.C.Colo.LCivR 7.1C, which states that a motion shall not be included in a response or reply but shall be included in a separate paper. Accordingly, the Court does not consider Mr. Sexton's motion to amend at this time.

[7] For purposes of this opinion, the Court refers to Defendants Hickenlooper, Hancock, and Henning collectively as the Defendants. Because the Unknown Officer has not been identified or served, this opinion and order does not address whether claims against him or her are subject to dismissal.

Defendants Hancock and Henning object **(#55)** to the Recommendation. They argue that the Recommendation improperly found that the Complaint stated viable claims for violations under the First Amendment and for excessive force under the Fourth Amendment as to Defendant Henning.

## II. Standard of Review

When a magistrate judge issues a recommendation on a dispositive motion, the parties may file specific, written objections within fourteen days after being served with a copy of the recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The district court shall make a *de novo* determination of those portions of the recommendation to which timely and specific objection is made. *U.S. v. One Parcel of Real Prop. Known as 2121 E. 30th St.*, 73 F.3d 1057, 1060 (10th Cir. 1996). Here, only Defendants Hancock and Henning filed timely and specific Objections **(#55)** to the Recommendation. Nevertheless, the Court has reviewed the matter under the otherwise applicable *de novo* standard of Rule 72(b).

In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all well-pled allegations in the Complaint **(#1)** as true and view those allegations in the light most favorable to Mr. Sexton. *Stidham v. Peace Officer Standards and Training*, 265 F.3d 1144, 1149 (10th Cir. 2001) (quoting *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999)). The Court must limit its consideration to the four corners of the Complaint, any documents attached thereto, and any external documents that are referenced in the Complaint and whose accuracy is not in dispute. *Oxendine v. Kaplan*, 241 F.3d 1272, 1275 (10th Cir. 2001); *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002); *Dean Witter Reynolds, Inc. v. Howsam*, 261 F.3d 956, 961 (10th Cir. 2001).

A claim is subject to dismissal if it fails to state a claim for relief that is "plausible on its face." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). To make such an assessment, the Court first discards those averments in the Complaint that are merely legal conclusions or "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* at 1949-50. The Court takes the remaining, well-pled factual contentions as true and ascertains whether those facts, coupled with the law establishing the elements of the claim, support a claim that is "plausible" or whether the claim being asserted is merely "conceivable" or "possible" under the facts alleged. *Id.* at 1950-51. What is required to reach the level of "plausibility" varies from context to context, but generally, allegations that are "so general that they encompass a wide swath of conduct, much of it innocent," will not be sufficient. *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012).

Rule 12(b)(1) motions to dismiss for lack of jurisdiction typically take one of two forms: (1) facial attacks, and (2) factual attacks. *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995). A facial attack on the Complaint's allegations as to subject matter jurisdiction questions the sufficiency of the Complaint. *Id.* In reviewing a facial attack on the Complaint, the well-pled allegations in the Complaint are accepted as true. *Id.* In a factual attack, the movant goes beyond the allegations in the Complaint and challenges the facts upon which subject matter jurisdiction depends. Therefore, the Court must look beyond the Complaint and has wide discretion to allow documentary and even testimonial evidence under Rule 12(b)(1) when determining jurisdictional facts. *Id.* at 1003.

### III. Analysis

#### A. First Amendment Claim

The Defendants argue that Mr. Sexton fails to state a claim that they violated his First Amendment rights to free speech and assembly. It appears, however, that the Defendants construe Mr. Sexton's allegations as a First Amendment retaliation claim. *See* Docket #s 24, 26, 41. The Court disagrees with this interpretation. Mr. Sexton does not appear to allege that actions were taken against him in retaliation for exercising his First Amendment rights. Rather, he alleges that the Defendants infringed upon his First Amendment rights to free speech and assembly when they ordered that the Occupy Denver demonstration in Civic Center Park be broken up, and they enforced such order. The Court sees the allegations as falling more appropriately into the framework of a public forum free speech claim. The Recommendation construed the claim in this way, and Mr. Sexton does not appear to object to such construction. Because the Defendants have moved to dismiss the First Amendment claim based on an improper reading of the allegations, their motions to dismiss with regard to that claim are denied.

#### B. Fourth Amendment Claims

Mr. Sexton brings two § 1983 claims for violations of the Fourth Amendment: unlawful arrest and excessive force.

*1. Unlawful Arrest*

The Defendants argue that Mr. Sexton's claim for unlawful arrest must be dismissed because (1) it is barred by *Heck v. Humphrey*, 515 U.S. 477 (1994), and (2) probable cause has already been established by virtue of Mr. Sexton's guilty plea to disturbing the peace.

*Heck* requires a court considering a § 1983 claim relating to a plaintiff's conviction to determine whether a judgment in favor of the plaintiff would necessarily imply the invalidity of

the conviction. If so, then the plaintiff must obtain invalidation of the conviction before pursuing his action for damages. *Id.* at 487. Generally, false arrest claims do not implicate *Heck* because improprieties in arrest typically do not undermine the validity of an ensuing conviction. *See Jackson v. Loftis*, 189 Fed.Appx. 775, 779 n.1 (10th Cir. 2006) (citing *Beck v. City of Muskogee Police Dep't*, 195 F.3d 553, 558 (10th Cir. 1999)). In certain instances, however, and depending on the particular nature of a plaintiff's claim, a false arrest claim may satisfy the "necessarily called into doubt" condition for invoking *Heck*. *Id.* For example, a plaintiff previously convicted for resisting arrest, which is defined as "intentionally preventing a peace officer from effecting a *lawful* arrest," would be barred from bringing a § 1983 claim for damages for unlawful arrest because such a claim necessarily implies that the arrest was not lawful. *Heck*, 512 U.S. at 486 n.6.

It is not entirely clear from the Complaint what Mr. Sexton alleges as the basis for his unlawful arrest claim. A liberal reading of his pleadings suggests that he makes two assertions: (1) the officers lacked probable cause to arrest him on any charge, and (2) the charge against him for disturbing the peace was fabricated by officers "to cover up their illegal behavior."

To the extent Mr. Sexton alleges that the charge against him for disturbing the peace was fabricated, thereby implying that he did not commit the crime, the Court finds that such claim is barred under *Heck*. The allegation that he the charge was false undermines the elements of the crime for which he was convicted. A ruling in Mr. Sexton's favor on the claim would necessarily call into doubt the validity of his conviction. Thus, to proceed on this claim, Mr. Sexton is required to allege that the conviction has been invalidated in his favor, which he has not done.

Mr. Sexton's allegation that officers lacked probable cause to arrest him, however, does not invoke *Heck*. In this regard, Mr. Sexton appears to allege that, although he committed the crime of disturbing the peace, the officers did not have probable cause to believe that he had committed that crime, or any other, at the time they arrested him. Such a challenge to the objective circumstances of his arrest does not call into doubt the validity of Mr. Sexton's conviction for disturbing the peace. *See Laurino v. Tate*, 220 F.3d 1213, 1217 (10th Cir. 2000) ("[A] suspect's proof that police lacked probable cause to arrest him does not necessarily imply the invalidity or unlawfulness of his conviction for the underlying offense."). Thus, under *Heck*, his § 1983 claim that the arrest was unlawful because officers lacked probable is allowed to proceed.

Defendants Hancock and Henning further argue that if *Heck* does not apply, the claim for unlawful arrest must be dismissed because probable cause has already been established. The Fourth Amendment requires that an arrest be supported by probable cause. *Fogarty v. Gallegos*, 523 F.3d 1147, 1158-59 (10th Cir. 2008). A claim for unlawful arrest cannot stand if there was probable cause for any offense that could be charged. *See Morris v. Noe*, 672 F.3d 1185, 1192 (10th Cir. 2012). Defendants Hancock and Henning argue that Mr. Sexton's guilty plea to the charge of disturbing the peace conclusively establishes that officers had probable cause to arrest him. This essentially amounts to an argument that Mr. Sexton is precluded from raising lack of probable cause in this case because that issue was previously determined by virtue of his guilty plea.

The Court rejects this argument. A guilty plea is simply an admission of factual guilty to all the elements of a crime. *Neuhaus v. People*, 289 P.3d 19, 21 (Colo. 2012). On its own, a guilty plea does not establish the issue of whether probable cause existed to arrest an individual.

In Colorado, such determination is typically made during a preliminary hearing. *People v. Nichelson*, 219 P.3d 1064, 1066-67 (Colo. 2009) ("The purpose of a preliminary hearing is to screen out cases in which prosecution is unwarranted by allowing an impartial judge to determine whether there is probable cause to believe that the crime charged may have been committed by the defendant."). More importantly, in this context, the charge to which Mr. Sexton pled guilty was contained in a summons issued to him long after he had been arrested and had been released from detention. Thus, whatever the motivation was for arresting Mr. Sexton, it apparently was not for behavior for which he has entered a plea of guilty. Thus, no inference can be made from the guilty plea that Mr. Sexton's arrest was warranted.

Finally, the Defendants contend that the Complaint does not show facts essential to support a § 1983 claim. To state a § 1983 claim, there must be personal participation by the alleged defendant in the constitutional violation. *Bennett v. Passic*, 545 F.2d 1260, 1262-63 (10th Cir. 1976); *Foote v. Spiegel*, 118 F.3d 1416, 1423 (10th Cir. 1997). Supervisors are not automatically liable for a subordinate's unconstitutional behavior. Supervisors are liable for subordinates' actions only where an "affirmative link" exists between the constitutional deprivation and evidence that the supervisor personally participated, controlled or directed, or failed to supervise, control or direct. *Fogarty v. Gallegos*, 523 F.3d 1147, 1162 (10th Cir. 2008).

The Court finds that the Complaint does not sufficiently allege an affirmative link between Defendant Hickenlooper and Defendant Hancock's conduct and the arrest. Although the Complaint alleges that Defendant Hickenlooper ordered Defendant Hancock and Denver Police to "disband" Occupy Denver, there is no allegation that officers were directed to arrest protestors or others present. Accordingly, the Complaint fails to state a § 1983 claim of unlawful arrest against Defendants Hickenlooper and Hancock.

The same is not true, however, as to Defendant Henning. Although the Complaint does not specifically identify who the officer was that initially dragged Mr. Sexton to the ground and placed him in handcuffs, the allegations are sufficient to establish an affirmative link between Defendant Henning's conduct and the alleged constitutional deprivation. Mr. Sexton alleges that Defendant Henning led the police that entered the park, and that after Mr. Sexton was restrained, he and Defendant Henning argued about the arrest. Mr. Sexton was not released after his argument with Defendant Henning, but instead he was transported to the Denver Detention Center. These allegations allow a plausible inference that Defendant Henning exercised a degree of control over keeping Mr. Sexton restrained and arresting him.

Having concluded that Mr. Sexton has alleged a constitutional violation for unlawful arrest, Defendant Henning is entitled to qualified immunity unless Mr. Sexton can also show that the constitutional right he violated was clearly established. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). With regard to unlawful arrest, the law at the time was, and is, unambiguous — a government official must have probable cause to arrest an individual. *See Fogarty*, 523 F.3d at 1158-59. Accordingly, Defendant Henning is not entitled to qualified immunity on Mr. Sexton's § 1983 claim for unlawful arrest.

*2. Excessive Force*

The Defendants each argue that Mr. Sexton's claim of excessive force against them must be dismissed because he fails to allege that they personally participated in the use of force.

The Court finds that the Complaint does not allege that there was an affirmative link between Defendant Hickenlooper and Defendant Hancock's conduct and the alleged use of excessive force. As noted above, there is no allegation that these Defendants were present in the park at the time the protest was broken up or that they controlled or directed the Unknown

11

Officer to choke Mr. Sexton. The order allegedly given by Defendant Hickenlooper to "disband" Occupy Denver is not alleged to have affirmatively directed officers to use force against protesters. Accordingly, Mr. Sexton has failed to state a § 1983 claim of excessive force against Defendants Hickenlooper and Hancock.

As to Defendant Henning, the Court finds that the Complaint states a plausible § 1983 excessive force claim against him. Liability under § 1983 requires personal participation in the constitutional violation. This does not mean, however, that an officer must physically contact a plaintiff to be liable for the use of excessive force. An officer can be liable for use of excessive force under § 1983 if he or she fails to intervene to prevent a fellow officer's use of such force. *See Fogarty v. Gallegos*, 523 F.3d 1147 (10th Cir. 2008). However, in such circumstances, the officer must have witnessed the use of excessive force, had a realistic opportunity to intervene to end it, and failed to do so. *See Wallin v. Dycus*, 381 Fed.Appx. 819, 823 (10th Cir. 2010 (citation omitted).

The allegations in the Complaint are sufficient to raise a plausible inference that Defendant Henning failed to intervene to prevent the Unknown Officer from placing his hands around Mr. Sexton's neck and choking him. Mr. Sexton alleges that Defendant Henning was pointing at him and reprimanding him, and that "shortly []after," the Unknown Officer put his hands around his neck. He also alleges that these events were captured in photographs that were taken "right after each other." Construing Mr. Sexton's pleadings liberally, it is reasonable to infer from the allegations that Defendant Henning witnessed the choking. Further, Mr. Sexton alleges that the use of force continued to the point that he feared he was being choked to death. This suggests that Defendant Henning had a realistic opportunity to intervene and failed to do so.

Finally, Defendant Henning is not entitled to qualified immunity on the § 1983 excessive force claim. The Court has found that the Complaint states a claim for excessive force, and the duty to intervene was clearly established at the time that the alleged violation occurred. *See Fogarty*, 523 F.3d at 1162 (citing *Mick v. Brewer*, 76 F.3d 1127, 1136 (10th Cir. 1996)).

### C. State Law Tort Claims

The Defendants argue that Mr. Sexton's state law claims for false arrest and assault and battery are barred because he did not file any notice of claims as required by the Colorado Governmental Immunity Act (CGIA), C.R.S. § 24-10-101 *et seq*.

The CGIA's notice requirement provides:

> Any person claiming to have suffered an injury by a public entity or by an employee thereof while in the course of such employment, whether or not by a willful and wanton act or omission, shall file a written notice as provided in this section within one hundred eighty-two days after the date of the discovery of the injury, regardless of whether the person then knew all of the elements of a claim or of a cause of action for such injury. Compliance with the provisions of this section shall be a jurisdictional prerequisite to any action brought under the provisions of this article, and failure of compliance shall forever bar any such action.

C.R.S. § 24-10-109(1).

The statutory notice provisions apply when federal courts hear Colorado tort claims under supplemental jurisdiction. *Renalde v. City & Cnty. of Denver*, 807 F.Supp. 668, 675 (D.Colo. 1992). Failure to file the required written notice "operates as a jurisdictional bar to the lawsuit." *Aspen Orthopedics & Sports Medicine, LLC v. Aspen Valley Hosp. Dist.*, 353 F.3d 832, 839 (10th Cir. 2003). Moreover, "a plaintiff must plead compliance with the CGIA's notice provisions in the complaint to avoid dismissal." *Id.* at 840. "When a plaintiff fails to plead compliance with the CGIA, and a court addresses the case in the context of a motion to dismiss,

13

the court must accept as a matter of 'fact' that the plaintiff failed to comply with the notice provisions." *Id.*

Mr. Sexton has not alleged compliance with the CGIA in his Complaint.  Indeed, he appears to admit in his Responses that he failed to file the notice of claims required by the CGIA. He argues, however, that the CGIA notice requirement does not apply in this case because the Defendants' conduct (1) created a dangerous condition in Civic Center Park on October 29, 2011, and (2) was willful and wanton.  Although the CGIA waives sovereign immunity for claims based on such conditions or conduct, *see* C.R.S. §§24-10-106(1)(e), -118(1), the notice requirements of the CGIA still applies to such claims of willful and wanton conduct and dangerous conditions.  *See* C.R.S. § 24-10-109(1); *Middleton v. Hartman*, 45 P.3d 721, 730-31 (Colo. 2002); *Colo. Dept. of Transp. V. Broun Group Retail, Inc.*, 182 P.3d 687, 689 (Colo. 2008).  Accordingly, Mr. Sexton's tort claims are barred under the CGIA for failure to file notice of his claims, and those claims are properly dismissed under Rule 12(b)(1).

### IV.  Conclusion

For the reasons stated above, the Court **ADOPTS** the Recommendation **(#54)** that Defendants Hickenlooper, Hancock, and Henning's Motions to Dismiss **(#20, 24)** be **GRANTED IN PART AND DENIED IN PART**.  All claims against Defendants Hickenlooper and Hancock, except the First Amendment claim, are dismissed.  As to Defendant Henning, no claims are dismissed but for the state law tort claims.

Dated this 18th day of March, 2014.

                                           **BY THE COURT:**

                                           Marcia S. Krieger
                                           Chief United States District Judge