IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 13–cv–01008–MSK–KMT

JOHN THOMAS SEXTON, JR.,

    Plaintiff,

v.

GOVERNOR JOHN HICKENLOOPER,
MAYOR MICHAEL HANCOCK,
LT. JAMES HENNING OF DENVER POLICE DEPARTMENT, and
OFFICER RANDY HINRICHER,

    Defendants.
_____

### RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

**Magistrate Judge Kathleen M. Tafoya**

    This case comes before the court on "Denver Defendants' Motion to Dismiss Plaintiff's Complaint Pursuant to the Fugitive Disentitlement Doctrine and Fed. R. Civ. P. 37(b) & (d)" No. 107) filed November 14, 2014 by defendants Mayor Michael Hancock, Lt. James Henning Denver Police Department and Officer Randy Hinricher ("Denver Defendants") and "Governor's Motion to Dismiss Plaintiff's Complaint Pursuant to the Fugitive Disentitlement Doctrine and R. Civ. P. 37(b) and (d)" (Doc. No. 109) filed November 20, 2014 by Defendant Governor John Hickenlooper, adopting the arguments of the Denver Defendants. The Plaintiff filed a consolidated response to both motions on December 1, 2014. (Doc. No. 110.)

1

**BACKGROUND**

Plaintiff John Sexton maintains that his First and Fourth Amendment rights were violated by the defendants during his arrest on October 29, 2011, alleged orders issued by Governor Hickenlooper and Denver Mayor Hancock to the Denver Police Department to disband the "Occupy Denver" protests.[1] (Compl. at 4.) The Plaintiff alleges that these orders and the subsequent actions by members of the Denver Police Department violated his First Amendment right of peaceful assembly and that the manner of his arrest violated Plaintiff's Fourth rights. (*Id.* at 10.) Plaintiff seeks damages of one million dollars. (*Id.* at 8.) Denver Defendants deny that any of Plaintiff's constitutional rights were violated before, during or after his arrest on October 29, 2011, at Civic Center Park during the Occupy Denver Protest.[2] (*See* Answers [Doc. Nos. 58 and 62].)

**PROCEDURAL HISTORY**

Although Plaintiff was in custody when he filed his case on April 17, 2013, he was from prison during the summer of 2013 and was apparently residing in Denver, Colorado. (*See* Letter dated August 2, 2013 [Doc. No. 42].) A Preliminary Scheduling Conference was set on August 21, 2013; however Plaintiff failed to appear and a Show Cause Order was issued. (Doc. No. 45.) When Plaintiff responded that he had simply gotten confused about the date and time of the hearing, the court discharged the show cause order without sanction. (Doc. No. 51.) In

---

[1] The Occupy movement was a protest against social and economic inequality wherein demonstrators camped in makeshift tents in public areas not normally associated with traditional camping activities. *See, e.g.*, Derek Thompson,. *Occupy the World: The '99 Percent' Movement Goes Global.* The Atlantic. October 15, 2011.

[2] A more robust account of the underlying facts is contained in the Recommendation of United Sates Magistrate Judge [Doc. No. 54] filed February 20, 2014.

October 2013, discovery in the case was stayed pending ruling on issues of qualified immunity. (Doc. No. 52.) During the time the case was stayed, Plaintiff apparently moved to South (*See* Motion to Change Address [Doc. No. 53].) Another Scheduling Conference was held on 13, 2014. (Doc. No. 73.) Plaintiff appeared at that conference via telephone with permission of the court. The discovery period was scheduled to close on September 12, 2014[3], and dispositive motions were scheduled to be filed on or before October 15, 2014. (*Id*.)

On September 29, 2014, the Denver Defendants filed a Motion to Compel and a Motion to Modify the Scheduling Order, claiming that Plaintiff was currently living in South Carolina and that he refused to come to Denver for his deposition. (Doc. No. 96 at 2-3.) According to the Denver Defendants, after Plaintiff was contacted on numerous occasions, he finally stated on September 22, 2014, "I am only available by phone or Skype. I live paycheck to paycheck and just can not [sic] afford it at this time. . . . I am planning to come to Denver for my trial and that is all." (*Id*. at 3.)

On October 9, 2014, the court held a hearing on the Denver Defendants' motions. began his entreaty to the court by stating that he was residing in South Carolina and could not afford to pay for a flight to Colorado for his deposition. The court however, anticipating this argument, confronted the Plaintiff with some very reasonable airfare costs for flights from his location to Denver and explained that such a cost would not be unduly burdensome, especially since he, as Plaintiff, had picked Colorado as the forum in which to litigate his case. As oft is the case, upon having one's lie refuted, the truth actually surfaced thereafter. Plaintiff told the court

---

[3] This date was later extended to September 30, 2014. (Doc. No. 94.)

that the "real" reason he could not return to Colorado was because he was subject to outstanding arrest warrants pending in Colorado. (*See* Doc. Nos. 100 and 105.) During a recess in the court confirmed the existence of the warrants. Upon reconvening, this court informed that there were at least two warrants outstanding for his arrest – one in Colorado and one in state – and that it would not assist in maintaining Plaintiff's status as a fugitive from justice; however, the court would allow some additional time so that Plaintiff could address the warrants. The court specifically ordered Plaintiff to appear in person in Colorado for his deposition on November 7, 2014. (Doc. No. 100.) The discovery cut-off date was extended to November 10, 2014, for the sole purpose of procuring the deposition of the Plaintiff.[4]  The Court advised the Plaintiff that whether or not the warrants were still outstanding on November 7, 2014, he must appear in Denver on that date and, further, specifically warned the plaintiff that failure to appear for his deposition could result in the dismissal of his case. (*Id.*)

Counsel for the Denver Defendants timely sent Plaintiff a Notice of Deposition noticing deposition for November 7, 2014 in Denver, Colorado. In response to being served with the deposition notice, Plaintiff mailed an *ex parte* letter to the court which the court caused to be had filed as part of the public record. (Doc. No. 105.) Plaintiff stated in the letter that he would not appear for his deposition as ordered. (*Id.*) In addition to complaining about the outstanding warrants and the costs of travel from South Carolina to Denver, Plaintiff also proclaimed that he had lied to the court on October 9, 2015, and stated he did not live in South Carolina but rather

---

[4] The dispositive motions deadline was also extended to December 10, 2014, in anticipation that Plaintiff's deposition would be taken pursuant to this court's order.

4

maintained his residence in Argentina.[5] (*Id.* at 1.) Plaintiff did not appear for his deposition on November 7, 2014 as ordered.

All defendants now move for dismissal of the case as a sanction for Plaintiff's failure to appear for his deposition as noticed and for directly disobeying this court's order. Since the time the two motions were fully briefed, the only communication Plaintiff has had with the court is a letter filed December 29, 2014, in which Plaintiff claimed he was trying to "resolv[e] my outstanding warrants." (Doc. No. 120 at 1.) Plaintiff has not sent the court a notification of of address, and his address for purposes of court communication is 540 Rosemary Lane, Tega South Carolina.[6]

### ANALYSIS

As a preliminary matter, the court notes that Plaintiff is proceeding *pro se* and therefore "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. (citations omitted); *see also Haines v. Kerner*, 404 U.S. 519, 520 (1972) (holding allegations of a *pro se* complaint "to less stringent standards than formal pleadings drafted by lawyers"). Nonetheless, as a *pro se* litigant, Plaintiff must still comply with both the Federal Rules of Civil Procedure as well as this Court's Local Rules of Practice. *Odgen v. San Juan County*, 32 F.3d 455 (10th Cir. 1994); *Nielson v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994) (*pro se* plaintiffs are

---

[5] The postmark and return address label on his letter both indicate the letter was mailed from South Carolina. (*Id* at 3.)

[6] On Doc. No. 110, Plaintiff's response to the instant motions, he lists under his signature an address of "Santa Fe 5280 Dpto 1E, Buenos Aires, Argentina 1425" and a phone number with a Denver, Colorado exchange.

held to the same rules of procedure which apply to other litigants). The fact that a party is appearing *pro se* does not relieve that individual from the obligation of complying with all applicable rules of the court. *Colorado v. Carter*, 678 F. Supp. 1484, 1490 (D. Colo. 1986).

### A. Failure to Prosecute and Disobedience of Court Order

Plaintiff bears the responsibility of complying with court orders and prosecuting his case. The Federal Rules of Civil Procedure give a district court ample tools to deal with recalcitrant litigants. *See Jones v. Thompson,* 99 F.2d 261, 264 (10th Cir. 1993). Fed. R. Civ. P. 16(f)(1)(C) and 37(b)(2) and D.C.COLO.LCivR 41.1 enable the Court to impose sanctions, including dismissal, when a party fails to obey pretrial orders. In particular, Rule 37(b)(2) permits the Court to issue an order "dismissing the action or proceeding in whole or in part" where a party fails to obey an order to provide or permit discovery." Fed. R. Civ. P. 37(b)(2)(A)(vi); *see also Ehrenhaus v. Reynolds,* 965 F.2d 916, 920 (10th Cir. 1992).

The Tenth Circuit has recognized that "[a] district court undoubtedly has discretion to sanction a party for failing to prosecute or defend a case, or for failing to comply with local or federal procedural rules." *Reed v. Bennett,* 312 F.3d 1190, 1195 (10th Cir. 2002). *See also Archibeque v. Atchison, Topeka & Santa Fe Ry. Co.*, 70 F.3d 1172, 1174 (10th Cir. 1995). However, dismissal is a severe sanction and generally requires the court to carefully consider certain criteria. *AdvantEdge Bus. Group v. Thomas E. Mestmaker & Assoc., Inc.,* 552 F.3d 1233, 1235 (10th Cir. 2009). In *Ehrenhaus,* the Tenth Circuit set forth a non-exhaustive list of factors be considered when evaluating grounds for dismissal of an action. 965 F.2d at 921. The factors are: "(1) the degree of actual prejudice to the defendant; (2) the amount of interference with the

judicial process; . . . (3) the culpability of the litigant; (4) whether the court warned the party in advance that dismissal of the action would be a likely sanction for noncompliance; and (5) the efficacy of lesser sanctions." *Id.* (internal quotations and citations omitted); *see also Gates Co. v. Bando Chems. Indus.*, 167 F.R.D. 90, 101 (D. Colo. 1996). "[D]ismissal is warranted 'the aggravating factors outweigh the judicial system's strong predisposition to resolve cases on their merits.' " *Ecclesiastes 9:10–11–12, Inc. v. LMC Holding Co.*, 497 F.3d 1135, 1144 (10th 2007) (quoting *Ehrenhaus*, 965 F.2d at 921).

The court finds that the *Ehrenhaus* factors weigh in favor of a dismissal of this action. First, the court finds that Defendants have been prejudiced by Plaintiff's failure to comply with this court's order granting the Denver Defendants' motion to compel and setting Plaintiff's deposition for November 7, 2015. Defendants spent a considerable amount of time trying to get deposition date from Plaintiff and digesting Plaintiff's lies about his real reason for not wanting come to Colorado. Ultimately, the defendants were required to expend time and money on filing and briefing a motion to compel, attending the hearing, drafting a Notice of Deposition, and showing up for a deposition which Plaintiff did not attend, and then filing and briefing the instant motions. All of the defendants have effectively been precluded from defending against Plaintiff's claims due to his refusal to appear. Plaintiff's refusal to attend his deposition also has inappropriately interfered with the defendants' ability to conduct complete discovery and has delayed the resolution of the case by requiring deadlines to be extended. Further, for the last months, the Plaintiff has sat idle, neither confronting the outstanding arrest warrants and

presenting evidence that he had removed that impediment to his deposition appearance nor contacting Defendants with a deposition date or other compromise solution.

The court also finds that Plaintiff has interfered significantly with the judicial process as well. The defendants have a right to take Plaintiff's deposition under Fed. R. Civ. P. 30 and, absent extreme hardship, a Plaintiff is required to appear in person for his deposition in the forum where he filed suit. *Srebnik v. Dean,* No. 05-cv-01086-WYD-MJW, 2006 WL 2331014 at *1 (D. Colo. June 20, 2006); *see also United States v. Rock Springs Visa Dep't*, 185 F.R.D. 603, 604-605 (D. Nev. 1999) (right to take deposition in person is particularly compelling when it involves a party). Plaintiff first interfered with this right when he refused to provide a firm date, location, and time for his deposition, thereby forcing the Denver Defendants to file a Motion to Compel on the eve of the close of discovery. More importantly, Plaintiff further and significantly interfered with the judicial process by disobeying the court's order compelling his deposition, even in light of the time period the court allowed for Plaintiff to attempt some resolution of the outstanding warrants. Plaintiff's refusal to attend his deposition has brought "[p]rogress toward the resolution of [his] case . . . to a standstill." *Gomez v. Dillon Cos., Inc.*, No. 09-cv-00676-REB-KLM, 2010 WL 1644610, at *3 (D. Colo. Apr. 22, 2010). S*ee also Armstong v. Swanson*, No. 08-cv-00194-MSK-MEH, 2009 WL 1938793, at *4 (D. Colo. July 2, 2009) (finding prejudice to the judicial system where plaintiff's neglect forced the Magistrate Judge to adjudicate a motion to compel, issued an Order to Show Cause, and entertain several motions to extend deadlines as a result of plaintiff's failure to participate in discovery).

As to the third factor, the court finds that Plaintiff willfully disregarded the court's order that he appear for his deposition on November 7, 2014. No excuse different from those already rejected by the court at the October 9, 2014, hearing was proffered for his non-compliance. In spite of the court's order, Plaintiff made it clear in his October 27, 2014, letter that he had no intention of attending his deposition as ordered. (Doc. No. 105 at 1.)

As to the fourth *Ehrenhaus* factor, the court specifically advised Plaintiff that his case could be dismissed if he failed to appear for his deposition as ordered. In spite the court's careful explanation to Plaintiff, he willfully failed to heed the court's warning.

Finally, as to the fifth *Ehrenhaus* factor, the court finds that Plaintiff's refusal to provide a date and time for his deposition and subsequent failure to obey this court's order setting his deposition to be unacceptable and that such litigation behavior should not be tolerated. Plaintiff's conduct has impaired the court's ability to ensure compliance with its own orders. *See EBI Securities Corp., Inc. v. Hamouth*, 219 F.R.D. 642, 647 (D. Colo. 2004) ("if a party could ignore court orders . . . without suffering the consequences, then the district court cannot administer orderly justice . . . .")  Further, because Plaintiff is proceeding *in forma pauperis,* a monetary sanction would be ineffective. Similarly, because the injury from Plaintiff's failure to comply is as much to the judicial system as it is to Defendants, a sanction limiting evidence would bear no substantial relationship to Plaintiff's misconduct. Altogether, under the circumstances presented, no lesser sanction would be effective, and dismissal is the appropriate sanction. Therefore, this court respectfully recommends the District Court dismiss this case with prejudice.

### B.     The Fugitive Disentitlement Doctrine.

Defendants also assert that this case should be dismissed pursuant to the Fugitive Disentitlement Doctrine, which originally provided that a court could dismiss a criminal defendant's appeal if he flees while his appeal is pending. See *Martin v. Mukasey,* 517 F.3d 1201, 1204 (10th Cir. 2008). As stated by the Supreme Court, there are two reasons to dismiss an appeal when a criminal defendant is a fugitive: "First, so long as the party cannot be found, the judgment on review may be impossible to enforce. . . . Second, we have said an appellant's escape disentitles him to call upon the resources of the Court for determination of his claims." *Degen v. United States,* 517 U.S. 820, 824 (1996) (internal quotation marks omitted)).

The extent to which the fugitive disentitlement doctrine applies in civil cases is an unsettled question. *See Hughes v. Colorado Dep't of Corr.*, No. 07-cv-00354-PAB-KLM, 2009 WL 3074619, at *2-4 (D. Colo. Sept. 21, 2009). The Tenth Circuit has upheld application of the fugitive disentitlement doctrine in a civil forfeiture action, *United States v. Timbers Preserve,* 999 F.2d 452, 455 (10th Cir. 1993), and applied the doctrine in an immigration appeal. *Martin,* 517 F.3d at 1204–05. Since *Degen,* some federal courts have narrowed their application of the fugitive disentitlement doctrine in civil cases, applying it only where a person's fugitive status has "a connection to the civil action, and the dismissal must animate the concerns underlying the fugitive disentitlement doctrine." *Barnett v. Young Men's Christian Assoc., Inc.,* 268 F.3d 614, 618 (8th Cir. 2001).

This case is similar to *Hughes* in that the plaintiff's fugitive status places him entirely beyond judicial control, thus creating a situation severely prejudicial to his adversaries. The

*Hughes* court found that "there is nothing to prevent [Plaintiff] from using the litigation process harass the defendants with impunity, and no measure that we can think of short of dismissal of suit that will protect the defendants from such harassment." *Hughes,* 2009 WL 3074619, at *3. *Hughes* differs from this case insofar as the whereabouts of the plaintiff were unknown, whereas this case, although the court is not convinced the Plaintiff is truthfully providing his location, he has received court mail and was responding to motions and other filings in his case.

Outside of this Circuit several cases are informative on the issue of applying the fugitive disentitlement doctrine in a civil context. In New York, the court in *Griffen v. City of New York Correctional Commissioner,* 882 F. Supp. 295 (E.D.N.Y.1995), applied the fugitive disentitlement doctrine in the context of a § 1983 claim. There the plaintiff asserted that prison and hospital officials failed to provide him prompt and adequate medical treatment in violation of the Eighth Amendment. *Id.* at 296. The court addressed whether the case should be dismissed after the plaintiff absconded from parole. *Id.* Applying the fugitive disentitlement doctrine, the court said:

> Any order of the Court, whether involving discovery, pre-trial motions or the trial itself, would be effectively unenforceable because [the plaintiff] is beyond the control of the court. His unknown whereabouts would doubtlessly frustrate the efforts of appointed *pro bono* counsel to communicate with his client and represent [the plaintiff's] interests.

*Id.* at 297. Thus, the court dismissed the absconder-parolee's complaint. *Id.*

Another federal district court opinion involving § 1983 claims and the fugitive disentitlement doctrine arose on the opposite coast. In *Cordell v. Tilton,* 515 F. Supp. 2d 1114, 1117 (S.D. Cal. 2007), the court considered whether to dismiss the § 1983 claims of a plaintiff alleging that his parole supervisors imposed and enforced unconstitutional conditions of parole.

The plaintiff in *Cordell* complained that his parole conditions were unsound because they him to reside in a different California county than had been his home prior to his incarceration. The plaintiff violated his parole conditions on three occasions by leaving the county where his parole residence was assigned and, ultimately, absconded from parole such that a warrant was pending against him during the pendency of his case before the district court. *Id.* at 1118. The parolee commenced and participated in the federal litigation while admitting that he was a and that he was actively evading arrest. *Id.* at 1120. Under these circumstances, the *Cordell* held that "[i]t would be inequitable to allow Plaintiff to litigate his claims challenging the of his parole while he remains a fugitive from the legal system." *Id.*

The Plaintiff admits he is a fugitive and that he has no intention of coming to Colorado and facing up to the criminal charges pending against him, notwithstanding his self-serving December 29, 2014 letter. Precisely because he is evading arrest, Defendants are unable to take his deposition, including showing to and questioning Plaintiff about pictures, videos, and other documentary evidence. This court agrees with the reasoning in *Griffen*, *Cordell* and *Hughes* that allowing a plaintiff who is a fugitive from justice to use the justice system to vindicate claims – especially where his evasion entails a refusal to enter the court's jurisdiction to actively prosecute his civil case – is inequitable.

Therefore, to the extent the District Court is disinclined to dismiss the case for failure of Plaintiff to prosecute his case and to engage in discovery and for willful disobedience of a court order, the fugitive disentitlement doctrine provides grounds for dismissal as well.

Wherefore, this court respectfully

**RECOMMENDS** that "Denver Defendants' Motion to Dismiss Plaintiff's Complaint Pursuant to the Fugitive Disentitlement Doctrine and Fed. R. Civ. P. 37(b) & (d)" [Doc. No. 107] and "Governor's Motion to Dismiss Plaintiff's Complaint Pursuant to the Fugitive Disentitlement Doctrine and Fed. R. Civ. P. 37(b) and (d)" [Doc. No. 109] be **GRANTED** and this case dismissed with prejudice in its entirety.

## ADVISEMENT TO THE PARTIES

Within fourteen days after service of a copy of the Recommendation, any party may and file written objections to the Magistrate Judge's proposed findings and recommendations the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the district court on notice of the basis for the objection will not preserve the for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or appellate review." *United States v. One Parcel of Real Prop. Known As 2121 East 30th Street, Tulsa, Okla.*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the district judge of the magistrate judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (a district court's decision to review a magistrate judge's recommendation *de novo* despite the lack of an objection does not preclude application the "firm waiver rule"); *One Parcel of Real Prop.*, 73 F.3d at 1059-60 (a party's objections to

magistrate judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review);  *Int'l Surplus Lines Ins. v. Wyo. Coal Ref. Sys., Inc*., 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the magistrate judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the magistrate judge's ruling); *but see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

Dated this 30th day of July, 2015.

BY THE COURT:

_____
Kathleen M. Tafoya
United States Magistrate Judge